Filed 12/14/21  P. v. Alvarenga CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B308758 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA070040-04) |
| v. | |
| KEVIN ALVARENGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Hayden A. Zacky, Judge.  Reversed and remanded with directions.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy

Attorney General, and John Yang, Deputy Attorney General, for Plaintiff and Respondent.

_____

A jury in 2013 convicted Kevin Alvarenga and three fellow gang members of first degree murder, attempted willful, deliberate and premeditated murder, shooting at an inhabited dwelling and several related felonies. On appeal this court reversed the first degree murder convictions of all four defendants for *Chiu* error (*People v. Chiu* (2015) 59 Cal.4th 155 (*Chiu*)), holding, in part, nothing in the record demonstrated beyond a reasonable doubt the jury had based its verdict on a finding that a particular defendant had been the actual killer and others had directly aided and abetted him, rather than that each defendant was guilty of first degree murder under the natural and probable consequences doctrine. (*People v. Gomez* (Jun. 23, 2015, B251303) [nonpub. opn.].) On remand the People elected not to retry Alvarenga for first degree murder, accepting a reduction to second degree murder.

On September 8, 2020 Alvarenga filed a petition to vacate his murder conviction and to be resentenced under Penal Code section 1170.95.[1] Eight days later the superior court, without first appointing counsel or inviting briefing, summarily denied the petition, finding the jury's true finding that Alvarenga had personally discharged a firearm causing death or great bodily injury (§ 12022.53, subd. (d)) conclusively established Alvarenga was ineligible for resentencing relief as a direct perpetrator in the killing or, at minimum, a major participant in the crimes who had acted with reckless indifference to human life.

_____

[1] Statutory references are to this code.

Alvarenga contends, and the Attorney General concedes, the superior court committed prejudicial error by failing to appoint counsel and prematurely engaging in factfinding before issuing an order to show cause and conducting an evidentiary hearing with respect to Alvaraenga's eligibility for resentencing on the murder conviction. We agree and reverse the order summarily denying Alvarenga's petition.

Alvarenga also argues that on remand the superior court should consider vacating his conviction for attempted murder, which, like his original conviction for first degree murder, was based on the natural and probable consequences doctrine. By its express terms section 1170.95 as originally enacted applied only to convictions for murder. (See *People v. Harris* (2021) 60 Cal.App.5th 557, 565-566, review granted Apr. 21, 2021, S267529.) However, Senate Bill No. 775 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 551, § 2) (Senate Bill 775), approved by the Governor October 5, 2021 and effective January 1, 2022, expands the reach of that ameliorative legislation to include certain convictions for attempted murder and voluntary manslaughter. Accordingly, because that amendment will be operative before this opinion is final, on remand the superior court is to permit Alvarenga to amend his petition to include his conviction for attempted murder, appoint counsel for Alvarenga, issue an order to show cause with respect to both the murder and attempted murder convictions and conduct further proceedings in accordance with section 1170.95, subdivision (d), as amended by Senate Bill 775.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Alvarenga's Murder Conviction, Appeal and Sentencing on Remand*

   a. *The trial*

Our opinion in *People v. Gomez*, *supra*, B251303, describes in detail the evidence presented at trial and the jury's verdict.

Alvarenga, Juan Carlos Andrade, Jovani Gomez and Leonardo Garcia were charged in an information with murder (§ 187, subd. (a)) (count 1), attempted willful, deliberate and premeditated murder (§§ 187, subd. (a), 664) (count 2), two counts of shooting at an inhabited dwelling (§ 246) (counts 3 and 4), discharge of a firearm with gross negligence (§ 246.3, subd. (a)) (count 7) and street terrorism (§ 186.22, subd. (a)) (count 8). It was specially alleged the offenses had been committed for the benefit of a criminal street gang (§ 186.22, subd. (b)) and as to counts 1 through 4 that each of the defendants had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d)) and/or a principal had personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (e)(1)).

According to the evidence at trial, German Chairez and Leonel Serrano were members of Columbus Street, a criminal street gang. Alvarenga, Andrade, Gomez and Garcia were members of the Vincent Town criminal street gang, a rival of Columbus Street's. On November 19, 2010 Chairez and Serrano were visiting a friend at an apartment complex in the North Hills section of the San Fernando Valley. As they walked down the stairs on their way out of the complex, Serrano heard someone shout "Fuck Columbus!" and saw two men shooting at him and Chairez. Serrano and Chairez immediately turned and raced

4

back up the stairs as shots continued to be fired.  Both men were hit in the back.  Chairez died from a bullet that perforated his lung.  Serrano survived.

Salvador Ortiz was in the area of the apartment complex on the night of the shooting and encountered Andrade, Garcia and Gomez, known to him by their gang monikers, "Happy," "Baby" and "Clever," respectively.  Ortiz noticed Andrade and Garcia were armed.  One man had a semiautomatic weapon; the other a revolver.  Their conversation was friendly because Ortiz, a member of the Barrio Van Nuys gang, was not a rival.  Within a few minutes of talking to them, Ortiz heard a person in the alley shout that a "Columbus Streeter" was nearby.  Andrade, Garcia and Gomez ran toward the apartment complex.  Ortiz saw Garcia quickly pull out a gun from underneath his sweatshirt.  Almost immediately, Ortiz heard a barrage of gunshots fired from two different guns.  He did not see the actual shooting.

At trial Serrano denied seeing the shooters.  Testifying after Serrano, Maria Gutierrez (Chairez's girlfriend and the mother of his child) explained she had overheard Serrano tell a friend that Clever and Big Boy, referring to Gomez and Garcia, had been the shooters and Happy and Kevin, referring to Andrade and Alvarenga, "had [also] been there."  Brandon Binning testified that two days before the shooting Andrade had told him something "was going to go down" and "Columbus Street was going to see that Vincent Town was back."

The People's theory at trial was that each of the defendants was either a direct perpetrator of the crimes charged or aided and abetted those offenses.  In addition to instructions on murder (CALCRIM No. 520), first degree premeditated murder (CALCRIM No. 521), attempted murder (CALCRIM No. 600),

5

attempted premeditated murder (CALCRIM No. 601) and shooting at an inhabited dwelling (CALCRIM No. 965), the jury was instructed on direct aiding and abetting principles (CALCRIM Nos. 400, 401) and the natural and probable consequences doctrine (CALCRIM Nos. 402, 403). Under the natural and probable consequences doctrine, the jury was told, it could find any one of the defendants guilty of murder and/or attempted murder if he aided and abetted the target offenses of shooting at an inhabited dwelling and/or the uncharged target offense of assault with a firearm, and the natural and probable consequence of either target offense was murder or attempted murder.

The jury convicted Alvarenga, Andrade, Gomez and Garcia of first degree premeditated murder and all other charged offenses and found each of the special allegations true, including the section 12022.53, subdivision (d), firearm-use enhancement allegations as to the murder, attempted murder and shooting at an inhabited dwelling charges. Alvarenga was sentenced to an aggregate indeterminate state prison term of 160 years to life.

b. *Alvarenga's appeal*

On appeal we reversed Alvarenga's and his codefendants' convictions for first degree murder based on the Supreme Court's decision in *Chiu, supra,* 59 Cal.4th 155, decided after their trial, which held aiders and abettors may be convicted of first degree premeditated murder under direct aiding and abetting principles, but not under the natural and probable consequences doctrine. (*Id.* at pp. 158-159.)[2] We explained that, although the

2 We also reversed the convictions for discharge of a firearm with gross negligence as a lesser included offense of the charge of shooting at an inhabited dwelling.

instructions arguably required the jury to find the individual who actually shot and killed Chairez possessed the requisite mental state of premeditation and deliberation for a first degree murder conviction, "without a clarification that the natural and probable consequences doctrine was limited to second degree murder, the instructions as a whole effectively permitted the jury to convict some or all of the defendants of first degree premeditated murder as an aider or abettor under that legally invalid theory."

We rejected the Attorney General's argument the *Chiu* error was harmless in light of the evidence at trial of planning and premeditation. We held, "Although the evidence is certainly sufficient to support a finding of premeditation and deliberation in this case, the prosecutor relied heavily on the natural and probable consequences doctrine at trial, telling the jury repeatedly during closing argument it need not find the defendants intended to commit a murder so long as it found murder was a natural, probable and foreseeable consequence of a different target offense. Nothing in this record demonstrates beyond a reasonable doubt that the jury based its verdict on the legally valid direct aiding and abetting (or direct perpetrator) theory rather than the invalid natural and probable consequences doctrine." (Fn. omitted.)

We remanded the case, explaining the People had the election in accordance with *Chiu* of accepting a reduction of the murder conviction on count 1 to second degree murder, with all associated enhancements found true by the jury, or to retry the greater offense of first degree premeditated murder (along with the accompanying specially alleged enhancements) under a direct aiding and abetting theory.

7

### c. *Proceedings on remand*

On remand the People elected not to retry the first degree murder charge. Resentencing Alvarenga, the court imposed an indeterminate state prison sentence of 120 years to life.

### 2. *Alvarenga's Petition for Resentencing*

On September 8, 2020 Alvarenga, representing himself, filed a petition for resentencing pursuant to section 1170.95 and requested the court appoint counsel to represent him in the resentencing proceedings. Alvarenga checked all the boxes on the printed form petition establishing eligibility for resentencing relief, including the boxes stating he had been convicted of first or second degree murder under the natural and probable consequences doctrine and could not now be convicted of first or second degree murder because of changes made to sections 188 and 189 by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) (Senate Bill 1437).

The superior court summarily denied the petition on September 16, 2020 without appointing counsel, requesting briefing from the prosecutor or holding an evidentiary hearing. The court explained a defendant could still be convicted of murder under the felony-murder rule if he or she was the actual killer, aided and abetted the killing or, as phrased by the court, "was a major participant in the crime and acted with reckless indifference." The court then determined the jury's true finding that Alvarenga had personally and intentionally discharged a firearm pursuant to section 12022.53, subdivision (d), necessarily established he was ineligible for relief either as a direct perpetrator in the killing (§ 189, subd. (e)(1)) or as a major participant who had acted with reckless indifference of the victim's life (§ 189, subd. (e)(3)).

8

## DISCUSSION

1. *Senate Bill 1437 and the Section 1170.95 Petition Procedure*

Senate Bill 1437 substantially modified the law relating to accomplice liability for murder, eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder (*People v. Gentile* (2020) 10 Cal.5th 830, 842-843 (*Gentile*)) and significantly narrowing the felony-murder exception to the malice requirement for murder. (§§ 188, subd. (a)(3), 189, subd. (e)(3); see *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) It also authorized, through new section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (See *Lewis*, at p. 957; *Gentile*, at p. 843.)

If the section 1170.95 petition contains all the required information, including a declaration by the petitioner that he or she was convicted of murder and is eligible for relief (§ 1170.95, subd. (b)(1)(A)), section 1170.95, subdivision (c), requires the court to appoint counsel to represent the petitioner, if requested;[3] to direct the prosecutor to file a response to the petition and permit the petitioner to file a reply; and to determine if the petitioner has made a prima facie showing that he or she is entitled to relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 962-963.)

---

[3] As amended by Senate Bill 775 effective January 1, 2022, the requirement to appoint counsel is set forth in new subdivision (b)(3) of section 1170.95, rather than subdivision (c).

In determining whether the petitioner has carried the burden of making the requisite prima facie showing he or she falls within the provisions of section 1170.95 and is entitled to relief, the superior court properly examines the record of conviction, "allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at p. 971.) However, "the prima facie inquiry under subdivision (c) is limited. Like the analogous prima facie inquiry in habeas corpus proceedings, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause. . . . However, if the record, including the court's own documents, contain[s] facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner." (*Id.* at pp. 970-971, internal quotation marks omitted.)

If the section 1170.95, subdivision (c), prima facie showing has been made, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts. (§ 1170.95, subd. (d)(1).) At the hearing the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).)[4] The prosecutor and petitioner may rely on the

[4] As amended by Senate Bill 775 effective January 1, 2022, section 1170.95, subdivision (d)(3), clarifies that, "A finding that there is substantial evidence to support a conviction for murder, attempted murder, or manslaughter is insufficient to prove,

10

record of conviction or offer new or additional evidence to meet their respective burdens. (See *Gentile*, *supra*, 10 Cal.5th at pp. 853-854.)

> ### 2. *The Superior Court Failed To Appoint Counsel as Required and Improperly Engaged in Factfinding Before Issuing an Order To Show Cause; Its Errors Were Not Harmless*

In *People v. Lewis*, *supra*, 11 Cal.5th 952, decided after Alvarenga's opening brief was filed, the Supreme Court held, once a petitioner files a facially sufficient petition requesting counsel, the superior court must appoint counsel before performing any prima facie review under section 1170.95, subdivision (c). Because Alvarenga checked all the necessary boxes on his form petition, the superior court erred by denying his petition without first appointing counsel.

The *Lewis* Court also held a superior court's failure to appoint counsel to represent a petitioner when assessing whether he or she has made a prima facie showing of entitlement to relief pursuant to section 1170.95, subdivision (c), is subject to harmless error analysis. (*Lewis*, *supra*, 11 Cal.5th at pp. 957-958, 973-974.) That is, reversal is not required notwithstanding the failure to appoint counsel if a review of the record of conviction indisputably establishes the petitioner is ineligible for relief. Here, however, because Alvarenga's eligibility for resentencing cannot be determined without an evaluation of the evidence and additional factfinding, the harmless error doctrine is inapplicable.

---

beyond a reasonable doubt, that the petitioner is ineligible for resentencing."

As discussed, this court held the trial record did not establish beyond a reasonable doubt that Alvarenga had been convicted of first degree murder on a legally valid theory (as the shooter acting with express malice and premeditation or as a direct aider and abettor of such a shooter) rather than as an aider and abettor of the target offense of shooting at an inhabited dwelling under the natural and probable consequences theory invalidated in *Chiu.* That holding necessarily established Alvarenga's prima facie eligibility for resentencing under section 1170.95—that is, the record of conviction does not conclusively establish Alvarenga is ineligible for relief. (See *Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) Accordingly, Alvarenga is entitled to an evidentiary hearing pursuant to section 1170.95, subdivision (d), to determine whether the court should vacate his murder conviction and resentence him on the remaining counts.

The superior court's summary denial of Alvarenga's petition, predicated on the jury's true finding of the section 12022.53, subdivision (d), firearm-use enhancement, rests on an apparent misunderstanding of both the significance of that enhancement and the requirements for application of the felony-murder rule. To be sure, the jury found Alvarenga had personally and intentionally discharged a firearm, proximately causing death or great bodily injury. However, that finding does not necessarily encompass a finding of actual malice. In light of the instructions and the prosecutor's closing argument, the jury may have convicted Alvarenga of murder and found true the related section 12022.53, subdivision (d), firearm-use enhancement based on his participation in the target crime of shooting at an inhabited dwelling and its conclusion Chairez's

12

death was the natural and probable consequence of that act. (See *People v. Offley* (2020) 48 Cal.App.5th 588, 598-599 ["[b]ecause an enhancement under section 12022.53, subdivision (d) does not require that the defendant acted either with the intent to kill or with conscious disregard to life, it does not establish that the defendant acted with malice aforethought"].)

Under the circumstances of this case the section 12022.53, subdivision (d), finding also does not justify the superior court's conclusion Alvarenga was ineligible for resentencing as a matter of law under the current version of the felony-murder rule, which applies only to a participant in the perpetration or attempted perpetration of one of the felonies listed in section 189, subdivision (a), in which a death occurs (§ 189, subd. (e)). Neither shooting at an inhabited dwelling nor the uncharged offense of assault with a firearm—the two target offenses argued by the prosecutor in support of the People's natural and probable consequences theory of murder—is identified in section 189, subdivision (a). Neither supports a guilty verdict on a charge of murder or attempted murder under the felony-murder rule, whether or not the petitioner was the actual killer (§ 189, subd. (e)(1)) or a major participant in the offense acting with reckless indifference (§ 189, subd. (e)(3)).

3. *On Remand Alvarenga May Amend His Petition To Include His Conviction for Attempted Murder Under the Natural and Probable Consequences Doctrine*

As originally enacted by Senate Bill 1437 section 1170.95, subdivision (a), authorized a petition to vacate a murder conviction and to be resentenced only by "[a] person convicted of felony murder or murder under a natural and probable

13

consequences theory." Even those courts of appeal that have held Senate Bill 1437's amendment to section 188, subdivision (a)(3)'s prohibition of imputing malice applied to a charge of attempted murder under the natural and probable consequences doctrine recognize that section 1170.95, by its express terms, does not authorize a petition to vacate an attempted murder conviction. (See, e.g., *People v. Harris*, *supra*, 60 Cal.App.5th at p. 565, review granted ["[n]o court has held that Senate Bill 1437 applies retroactively to final convictions of attempted murder"]; *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 ["relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder"].)

As amended effective January 1, 2022 by Senate Bill 775, however, section 1170.95, subdivision (a), will provide, "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ." (Italics added.)[5]

---

[5] In an uncodified statement of its intent in enacting Senate Bill 775, the Legislature declared the legislation "(a) Clarifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories. [¶] (b) Codifies the holdings of People v. Lewis (2021) 11 Cal.5th 952,

14

Our remittitur remanding this cause for an evidentiary hearing as to Alvarenga's eligibility for resentencing under section 1170.95 will issue after the effective date of Senate Bill 775's amendment expanding the scope of section 1170.95 to include convictions for attempted murder under the natural and probable consequences doctrine. The reasons that preclude finding Alvarenga ineligible for resentencing relief as a matter of law with respect to his conviction for the murder of Chairez apply equally to his conviction for the attempted murder of Serrano. Accordingly, on remand the superior court must permit Alvarenga to amend his petition to include a request to vacate his attempted murder conviction and the order to show cause to be issued is to include both convictions. (See *Gentile, supra,* 10 Cal.5th at p. 852 ["[n]ewly enacted legislation lessening criminal punishment or reducing criminal liability presumptively applies to all cases not yet final on appeal at the time of the legislation's effective date"].)

---

961-970, regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case. [¶] (c) Reaffirms that the proper burden of proof at a resentencing hearing under this section is proof beyond a reasonable doubt. [¶] (d) Addresses what evidence a court may consider at a resentencing hearing (clarifying the discussion in People v. Lewis, supra, at pp. 970-972)." (Stats. 2021, ch. 551, § 1.)

## DISPOSITION

The order denying Alvarenga's section 1170.95 petition is reversed.  On remand the superior court is to permit Alvarenga to amend his petition to include his conviction for attempted murder, appoint counsel for Alvarenga, issue an order to show cause with respect to Alvarenga's eligibility for resentencing for murder and attempted murder and conduct further proceedings in accordance with section 1170.95, subdivision (d), as amended by Senate Bill 775.


                                            PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.